## LA SALLE HOTEL REALTY CO. v. TAFT.
### No. 5750.

Circuit Court of Appeals, Seventh Circuit.

June 23, 1936.

Rehearing Denied July 21, 1936.

Vitus G. Jones, Roland Obenchain, Paul M. Butler, and Francis Jones, all of South Bend, Ind., for appellant.

U. S. Lesh, James E. Lesh, and Samuel T. Lesh, all of Indianapolis, Ind., Dudley M. Shively, of South Bend, Ind., and Lincoln Lesh and William T. Lesh, both of Muncie, Ind., for appellee.

Before EVANS and ALSCHULER, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

The controversy which this appeal presents, involves the question of who should bear a substantial loss occasioned by the failure of the Meyer-Kiser Bank, which closed May 11, 1931, with $40,770.22 on deposit belonging either to appellant or a group for which appellee assumes to speak.

Appellant, an Indiana corporation, constructed a hotel building at South Bend. In order to finance the venture it contracted with the Meyer-Kiser Bank, which although organized to do a banking business was engaged at the time in the more questionable and dubious business of financing commercial ventures of a somewhat hazardous nature.

The agreement entered into between appellant and the bank provided, among other things:

"7. So long as any of said preferred stock is outstanding, said LaSalle Hotel Realty Company shall:

"(a) Pay no salaries to its officers and no dividends on its common stock * * * unless all current obligations on its preferred stock, both as to dividends and as to redemption of principal, shall have been first paid in full and funds deposited with second party sufficient to meet all obligations on the preferred stock for the ensuing three months. * * *

"(g) Place on deposit with second party each month so much of its rental receipts as constitutes one-twelfth of the obligations for the ensuing year to its preferred stockholders, to be withdrawn solely for the purpose of meeting such obligations."

The bank sold the preferred stock to its customers. The preferred stock was retirable as follows:

| Maturity | Amount |
| --- | --- |
| June 1, 1923 | $21,000.00 |
| June 1, 1924 | 24,000.00 |
| June 1, 1925 | 26,000.00 |
| June 1, 1926 | 27,000.00 |
| June 1, 1927 | 30,000.00 |
| June 1, 1928 | 32,000.00 |
| June 1, 1929 | 34,000.00 |
| June 1, 1930 | 36,000.00 |
| June 1, 1931 | 39,000.00 |
| June 1, 1932 | 41,000.00 |
| June 1, 1933 | 43,000.00 |
| June 1, 1934 | 46,000.00 |
| June 1, 1935 | 26,000.00. |

Appellant was to deposit with the bank money with which to retire the preferred stock according to a plan upon which the stock was sold. Appellant paid to the

bank sums in amounts and on days as follows:

| Date | Amount |
|---|---|
| April 18, 1930 | $1,500.00 |
| May 20, 1930 | 5,000.00 |
| June 9, 1930 | 5,000.00 |
| July 7, 1930 | 5,000.00 |
| August 11, 1930 | 7,000.00 |
| September 9, 1930 | 5,000.00 |
| November 5, 1930 | 3,000.00 |
| December 3, 1930 | 6,000.00 |
| April 17, 1931 | 4,500.00. |

On the first day of June, 1931, preferred stock of the amount of $39,000 (of which $33,000 was outstanding) was to be retired. On May 11, 1931, the bank closed. Although appellee brought this suit as a preferred stockholder for himself and all others similarly situated who desired to join, and asked for the appointment of a receiver, the precise and narrow question upon which the decision turns is a simple one, viz., Who shall stand the loss occasioned by the bank's failure?

The court found:

"1. That the Meyer-Kiser Bank was the agent of the defendant, LaSalle Hotel Realty Company, in receiving and disbursing the funds deposited with it for meeting the defendant's obligations to its preferred stockholders;

"2. That the making of said deposits did not constitute payment of said obligations;

"3. That the loss of said funds through the closing of said bank must be sustained by the defendant;

"4. That the plaintiff and the several other holders of the preferred shares of stock which matured June 1, 1931, still outstanding in the face amount of $33,000.00, are entitled to receive payment with interest thereon computed from the date of said maturity, at the rate of 6% per annum, (before any payments are made on account of the outstanding preferred stock maturing subsequent to that date);

"5. That the holders of the outstanding preferred shares of stock maturing June 1, 1929, in the face amount of $4,500.00 and of the preferred shares of stock maturing June 1, 1930, in the face amount of $1,700.00, are entitled to receive payment, with 6% interest thereon from the date of said maturities, before any payments are made on account of the outstanding preferred stock maturing subse-

quent to that of June 1st, 1931, but on an equality basis with the aforesaid outstanding 1931 maturities."

It, however, did not appoint a receiver.

Appellant excepts to the holding that the money in the bank belonged to it at the time the bank closed. It asserts that the money belonged to the stockholders for whose benefit it was deposited. Whether the court's finding and conclusion on this issue is supported by the evidence necessitates a study of the specific provisions of the agreement under which the money was deposited and the action of the appellant and the bank in making and receiving the deposits. As bearing upon this narrow issue, the following quotation is pertinent.

"At the first meeting of the directors of defendant, which was held on May 21, 1921, said directors approved and caused to be executed by the officers of the corporation a contract to which the defendant and said former Meyer-Kiser Bank were parties, * * *" (excerpts from which contract are given above).

The bank record is also illuminating. The following quotation appears:

"From time to time prior to May 12, 1931, the defendant made deposits, first with the said former Meyer-Kiser Bank and later with the present Meyer-Kiser Bank, which deposits were credited from time to time upon an account kept by said bank for such purpose and which account was carried in a book on which marginal tab appeared the words 'Sinking Fund.' The particular page on which said deposits were credited carried the account name of 'LaSalle Hotel Realty.' Said bank from time to time credited said account with interest upon all said deposits at the rate of *' * * 3½% * * * per annum. On May 12, 1931, there was a credit balance in said account of * * * $40,770.22 * * * arising out of the making of such deposits and the interest credited thereon. Said account was the only account carried by said bank in the name of the defendant. The defendant at no time during its corporate existence made any payments to said bank other than those incident to the underwriting agreement set forth in Finding No. 7, and the payment of dividends and the retirement of preferred stock, whether by retirement on maturity or by acquisition otherwise than on maturity, in the manner herein set forth in Finding No. 9. This one account was used continuous-

341

ly from the time of the first payment made to the Meyer-Kiser Bank under the said underwriting agreement. It was never closed prior to the closing of the bank and no other account was opened and no modification was made in the manner in which the moneys paid by the defendant to the Meyer-Kiser Bank were handled.

"From time to time prior to May 12, 1931, said Bank paid to the preferred stockholders of the defendant sums to which they were entitled for the redemption of their preferred stock as the same matured and for the payment of dividends upon their said preferred stock as the same became due, all of which disbursements were debited from time to time to said account."

It is at least significant that appellant paid the bank $200 per year for services rendered. The underwriting agreement provided that it,—

"(e) Employ the second party as Registrar of its preferred stock and as fiscal agent in making all disbursements to its preferred stockholders, and pay them for such services the sum of * * * $200.00 * * * per year."

If the money when deposited in the bank satisfied appellant's obligation to retire its preferred stock, the query naturally arises, What stockholder was to be paid off if the amount on deposit were insufficient to pay all matured stock? This was the situation when the bank failed. The deposits by appellant were made monthly. Redemptions of stock were at fixed periods in no way connected with the dates of bank deposit.

It must be admitted that the bank deposits were to insure or more nearly insure payment of appellant's obligation to retire its preferred stock. Likewise, it may be conceded that deposits once made by appellant could not be withdrawn by it. But payment for stock which was a satisfaction of contractual obligations did not occur until the bank paid the money to the stockholder entitled to it. Sinking Fund Cases (Union Pacific R. Co. v. United States), 99 U.S. 700, 25 L.Ed. 496. Until this satisfaction occurred the money in the bank did not pass to the preferred stockholders. See Silver v. Park-Lex Holding Corporation, 222 App.Div. 40, 225 N.Y.S. 394, affirmed 248 N.Y. 537, 162 N.E. 515; Andrews v. Missouri State Life Ins. Co. (C.C.A.) 61 F.(2d) 452. The loss therefore must be borne by the depositor, the appellant.

The decree is

Affirmed.